J-A16032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL GEORGE RICCI | : | |
| | : | |
| Appellant | : | No. 1308 MDA 2022 |

Appeal from the Judgment of Sentence Entered August 23, 2022
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0000723-2021

BEFORE: PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED: AUGUST 7, 2023**

Michael George Ricci (Appellant) appeals from the judgment of sentence entered in the Cumberland County Court of Common Pleas after his jury convictions of one count each of corruption of minors and unlawful contact with a minor, and two counts of indecent assault.[1] On appeal, Appellant argues the trial court abused its discretion when it granted, following closing arguments, the Commonwealth's oral motion to amend the information as to unlawful contact, from Subsection 6318(a)(5) (child pornography) to Subsection 6318(a)(1) (sexual offenses). After review, we affirm the judgment of sentence, but remand to the trial court for correction of a clerical

---

[1] 18 Pa.C.S. §§ 6301(a)(1)(ii), 6318(a)(1), 3126(a)(1), 3126(a)(8) (victim under 16 years of age), respectively.

error, as Appellant's record continues to reflect a conviction under Subsection 6318(a)(5).

We first note: to commit unlawful contact under Subsection 6318(a)(1), a party must have intentional contact with a minor for the purpose of engaging in a sexual offense listed under Chapter 31, which includes indecent assault. *See* 18 Pa.C.S. § 6318(a)(1); *see also* 18 Pa.C.S. § 3126(a)(1), (8). To commit unlawful contact under Subsection 6318(a)(5), a person must have intentional contact with a minor relating to the creation, dissemination, and possession of child pornography. *See* 18 Pa.C.S. § 6318(a)(5); *see also* 18 Pa.C.S. § 6312 (relating to child pornography).

On July 31, 2020, Cumberland County Child & Youth Services (CYS) received an anonymous phone call disclosing then 14-year-old O.S. (Victim) raised allegations of abuse against Appellant, her stepfather.[2] *See* N.T. Jury Trial at 52. After CYS received this phone call, Children's Resource Center Forensic Interviewer Megan Leader spoke with Victim about the accusations. *Id.* at 54.

On October 16, 2020, the Pennsylvania State Police filed both a criminal complaint and affidavit of probable cause. The complaint stated he was charged with, *inter alia*, unlawful contact under Section 6318(a), but did not

_____

[2] Victim was born in November of 2005. N.T. Jury Trial, 5/17/22, at 65. Victim's older half-sister, H.C., testified at trial that she made the phone call to ChildLine, who then contacted CYS. *Id.* at 52, 110.

specify any further subsection, i.e. (a)(1) or (a)(5).[3]  Police Criminal Complaint, 10/16/20, at 2.  Nevertheless, the supporting factual allegation was that Appellant "corrupt[ed] the morals of [V]ictim by touching her vagina with his finger, making inappropriate comments about [V]ictim's body[,] and inappropriately rubbing his body against [her]."  *Id.*  The accompanying affidavit of probable cause did not list any offenses or criminal statutes, but stated Appellant was accused of "inappropriately touch[ing]" Victim.  *See* Affidavit of Probable Cause, 10/16/20, at 1.

On March 15, 2021, the trial court held a preliminary hearing.[4]  On May 21st, the police filed a criminal information, which charged Appellant with unlawful conduct under Subsection (a)(5), relating to the creation, dissemination, and possession of child pornography.  Criminal Information, 5/21/21, at 2 (unpaginated); *see* 18 Pa.C.S. §§ 6318(a)(5), 6312.  The information did not allege the underlying conduct for this charge, nor was Appellant charged with any child pornography offenses under Section 6312.  *See id.*

This matter proceeded to a jury trial on May 17, 2022, where the parties presented the following evidence.  The Commonwealth called Victim, who testified that starting when she was 13 or 14 years old, Appellant made

---

[3] We note the complaint specified the subsections of Appellant's remaining charges.  Police Criminal Complaint at 2.

[4] Upon informal inquiry of this panel, the trial court did not possess a copy of the preliminary hearing transcript.

"comments [to her] and [did] things that [made her] feel uncomfortable[.]" N.T. Jury Trial at 70. This behavior lasted about six months. *Id.* at 82. Appellant's comments included that "if [Victim is] anything like [her] mom[, she] will have . . . a good body[,]" she was "developing well[,]" her "butt and . . . boobs . . . were nice[,]" and he "want[ed]" her to wear "Daisy Duke[ ] shorts[.]" *Id.* at 70-71, 80. Victim also stated that when she was 14, Appellant "started . . . asking what kind of underwear [she] had on, . . . pulling [her] shirt forward [to] look down the front[,]" and "putting his hands . . . down the side of [her] pants." *Id.* at 72. Victim estimated that Appellant asked her about her underwear about 20 times and what kind of bra she was wearing a "couple" times. *Id.* at 73, 77. Victim testified that in response to these comments, she would walk away, change the topic, or ask Appellant to stop "[b]ecause it made [her] uncomfortable." *Id.* at 72, 75, 77.

Victim testified Appellant also touched her back under her shirt up to "her bra strap" and "one time[, he] took his finger and . . . flipped up the front of [her] vagina" while she was wearing shorts. N.T. Jury Trial at 75, 77. Lastly, Victim detailed that Appellant "rub[bed] up against [her leg and hip] sometimes" with his "penis and . . . legs" while clothed. *Id.* at 78-79.

Victim's older half-sister H.C. then testified that beginning around April or May of 2020, Victim had "multiple" conversations with her regarding Appellant's behavior.[5] N.T. Jury Trial at 109-11. She stated Victim texted her

---

[5] H.C. was 19 at the time of trial.

- 4 -

that Appellant "put his hand up her shorts, [told] her she was developing extremely well, [and made] her sit in his lap and [Victim] could feel [his] erection." *Id.* at 110.

The Commonwealth also presented Pennsylvania State Police Trooper Krista Miller, the investigating officer in this matter. Appellant asked if Trooper Miller obtained any physical evidence during the investigation, to which she responded "[t]here wouldn't have been any physical evidence to . . . obtain based on the allegations." N.T. Jury Trial at 61. She further explained that "based on the allegations, even with touching, clothes can be laundered[, and] your body can be washed . . . so even swabbing them would not be able to determine" whether there was any prior touching. *Id.* at 62-63.

Appellant, represented by Sean M. Owen, Esquire (Trial Counsel), testified in his defense that he never made inappropriate comments or touched Victim sexually. N.T. Jury Trial at 171-72, 174, 177. He stated he was "affectionate" with all his children, especially during the COVID-19 pandemic.[6] *Id.* at 172. Appellant detailed that "[s]ometimes" before leaving for work in the morning, he would be tired and go into Victim's or M.R.'s bedrooms and "lay beside them" while talking about their chores, but he did not do anything sexual. *See id.* at 173-74. He testified that as the father,

---

[6] Appellant has two biological children, Victim's younger half-siblings, M.R. and E.R., who were 14 and 5 at the time of trial, respectively. N.T. Jury Trial at 66-67, 178-79. M.R. and E.R. lived in the home with Victim, Appellant, and Victim's mother at the time of the alleged conduct. *Id.* at 166.

he is "allowed to do that." *Id.* Appellant also admitted to "snuggl[ing]" Victim and his other children, but he did not think he was doing anything inappropriate. *Id.* at 179, 185.

During direct examination, Appellant admitted he made comments about Victim's underwear by asking what color they were. N.T. Jury Trial at 175. He reasoned they "made her look funny[,]" and thus, he and Victim's mother "bought [her] different [underwear.]" *Id.* at 175-76. When asked if he "ever ma[de] inappropriate sexual comments about [Victim's] boobs and butt[,]" he responded: "I made comments. I make comments about all of my children, all of them growing up. I say that about [E.R. and M.R.] It is just normal talk that fathers do." *Id.* at 176. Further, when asked if he "ever intentionally touch[ed Victim] in a sexual manner[,]" he responded, "Never[,]" but stated they would "wrestle[ ] around" and "play[.]" *Id.* at 178.

With respect to the unlawful contact charge, both parties' closing arguments focused on Appellant's inappropriate comments and touching of Victim,. *See* N.T. Jury Trial at 195-97, 199-200. Following closing arguments, Trial Counsel informed the trial court the jury instruction regarding unlawful contact "alluded to [Section] 6318(a)(1)[,]" relating to sexual offenses, but upon review of the information, he noticed Appellant was charged under Subsection (a)(5), relating to child pornography. *Id.* at 207. Trial Counsel requested the court to amend the jury instructions to Subsection (a)(5). *Id.* at 208. The Commonwealth responded both parties and the court were operating "under the impression" that Appellant was charged under

Subsection (a)(1), and the information merely contained an "administrative or . . . clerical error[.]" *Id.* The Commonwealth then orally motioned to amend the information to charge Appellant under Subsection (a)(1). *Id.* Appellant objected. *Id.* The trial court granted the motion, ruling the information would "be amended to conform to what everybody has been operating on since day one [of] trial." *Id.*

The jury found Appellant guilty on all charges. On the jury's verdict sheet, it specified it found Appellant guilty of unlawful contact for: (1) "rubbing" his penis against Victim; (2) "flick[ing] her vagina with his finger[;]" (3) touching her underneath the waistband of her shorts; and (4) putting his hands up the back of her shirt to touch her bra strap. Verdict Slip Unlawful Contact, 5/19/22.

On August 23, 2022, the trial court sentenced Appellant to the following: (1) for corruption of minors, a term of six to 23 months' incarceration; (2) for unlawful contact with a minor, five years' probation — a sentence below the standard guideline range; (3) for indecent assault, two years' probation; and (4) for indecent assault (victim under 16 years old), two years' probation. The court ordered each sentence to run concurrently. Although the trial court granted the Commonwealth's motion to amend the information to Subsection (a)(1), the guideline sentencing form and criminal docket reflect Appellant was sentenced under Subsection (a)(5).

With new counsel, Craig E. Kauzlarich, Esquire, Appellant filed a timely notice of appeal and complied with the trial court's order to file a concise

statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

He raises the following for our review:

> Did the Honorable [t]rial [c]ourt err and commit an abuse of discretion in granting the Commonwealth's Motion to Amend Count 2 of the Information, when such motion was highly untimely and prejudicial to the defense due to not being made until after the close of evidence and closing arguments?

Appellant's Brief at 5.

In Appellant's sole claim on appeal, he avers the trial court erred when it allowed the Commonwealth to amend the information after closing arguments. We review such a challenge for an abuse of discretion. *See Commonwealth v. Sandoval*, 266 A.3d 1098, 1101 (Pa. Super. 2021).

> An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Id.* (citation omitted).

The statute for unlawful contact provides in pertinent part:

> **(a) Offense defined.** — A person commits an offense if he is intentionally in contact with a minor . . . for the purpose of engaging in an activity prohibited under any of the following[:]
>
> > (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).
>
> > \* \* \*
>
> > (5) Sexual abuse of children as defined in section 6312 (relating to sexual abuse of children).

18 Pa.C.S. § 6318(a)(1), (5).

The current version of Pennsylvania Rule of Criminal Procedure 564 governs when the trial court may allow amendment of the charges against a defendant:

> The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.
>
> *Comment:*
>
> The rule was amended in 2016 to more accurately reflect the interpretation of this rule that has developed since it first was adopted in 1974. **See Commonwealth v. Brown**, 727 A.2d 541 (Pa. 1999). **See also Commonwealth v. Beck**, 78 A.3d. 656 (Pa. Super 2013); **Commonwealth v. Page**, 965 A.2d 1212 (Pa. Super. 2009); **Commonwealth v. Sinclair,** 897 A.2d 1218 (Pa. Super. 2006).

Pa.R.Crim.P. 564 & *comment*. "The purpose of this rule is to 'ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed.'" **Commonwealth v. Jackson**, 215 A.3d 972, 979 (Pa. Super. 2019) (citation omitted).

As Appellant discusses the previous version of Rule 564, we note the prior rule dictated the following:

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different

offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

*See* Pa.R.Crim.P. 564 (2016).

When reviewing a challenge to an amendment to a criminal information, we consider

> [w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.
>
> Relief is warranted only when the amendment to the information prejudices a defendant. Factors to be considered when determining whether [the defendant] was prejudiced by the Commonwealth's amendment include whether the amendment changes the factual scenario; whether new facts, previously unknown to [the defendant], were added; whether the description of the charges changed; whether the amendment necessitated a change in defense strategy; and whether the timing of the request for the amendment allowed for ample notice and preparation by [the defendant].

*Jackson*, 215 A.2d at 979-80 (citations omitted).

Returning to Appellant's argument, he avers the trial court abused its discretion when it permitted the Commonwealth to amend the criminal information after closing arguments because it was "highly untimely and prejudicial[.]" Appellant's Brief at 11. He alleges that the prior versions of Rule 564 permitted amendments when there was a "defect in form[,]" but the

current version of the rule removed this language. *Id.* Thus, he contends the rule, as presently written, does not support amendments for "clerical error[s.]" *Id.* at 12, 17.

Appellant insists the amendment caused him prejudice because it "changed the factual scenario" and description of the charges and added "new, previously unknown facts[,]" and the Commonwealth's motion was so untimely that he received no notice to defend against the charge. Appellant's Brief at 13-15. Appellant contends that he was not on notice to defend against unlawful contact under Subsection (a)(1), and he proceeded as if defending against Subsection (a)(5) — unlawful contact relating to child pornography. *See id.* at 13-14. He maintains that "indecent assault was not alleged to serve as the underlying act for purposes of unlawful contact [and] was a novel theory never presented to the defense until after" closing arguments. *Id.* at 14. Appellant argues the Commonwealth "moved the goal posts after the game . . . concluded." *Id.* at 15. He also avers that despite the amendment, public records currently erroneously reflect that he was convicted of unlawful contact under Section 6318(a)(5).[7] *Id.* at 11, 17-18. No relief is due.

In the instant case, the trial court reasoned it did not abuse its discretion when it granted the Commonwealth's motion to amend. Trial Ct. Op., 11/9/22, at 1. Specifically, it noted:

---

[7] We note Appellant acknowledges that unlawful contact under the amended subsection "would not have changed the guideline range" of sentences. Appellant's Brief at 8 n.3.

The amended offense did not emerge from a different set of events than those originally charged, i.e. the long-running abuse of [Victim]; nor was it "so materially different" from the original charges that [Appellant] was unfairly prejudiced. Pa.R.Crim.P. 564[; *see*] *Sandoval*, 266 A.3d 1098 . . . ("the test is [whether the offenses] involve the same basic elements and evolved out of the same factual situation"). Indeed, violations of Pa.C.S. § 3126(a)(1) [(indecent assault)] and (8) (indecent assault of a minor), with which [Appellant] was originally charged, all but entail the violation of 18 Pa.C.S. § 6318(a)(1) (contact with minor for purpose of committing offense under Chapter 31), the sole additional element of the latter being "contact" in the communicative rather than physical sense. . . .

[The] discussion of the matter with counsel at sidebar suggested that the original citation to [18 Pa.C.S.] § 6318(a)(5) was, indeed, a clerical error and that [Trial Counsel] had always anticipated defending his client against the charge as amended. We have heard no argument as to precisely how [Appellant] was prejudiced by the amendment and find it difficult to envision how that might have occurred under the circumstances. . . .

*Id.* at 2-3 (some citations omitted). We agree.

First, we address Appellant's argument that Rule 564 does not allow amending an information due to a "defect in form." *See* Appellant's Brief at 11-12, 17. Contrary to Appellant's assertion, the current version of Rule 564 did not narrow the scope of application. The comment to the current Rule cited caselaw to explain the changes, none of which support Appellant's contention for this interpretation. *See Brown*, 727 A.2d at 544-45 (the defendant was entitled to a new trial because he could not have anticipated the Commonwealth would amend the criminal information — initially charging him with rape by forcible compulsion and involuntary deviate sexual intercourse (IDSI) by forcible compulsion — to rape of an unconscious person

and IDSI of an unconscious person, based on the evidence offered at the preliminary hearing, and the change rendered his defense a nullity); ***Beck***, 78 A.3d at 661 (the defendant was not prejudiced after the Commonwealth amended the information to add driving under the influence (DUI) —high rate of alcohol, because he: (1) was on notice, due to prior filings, that the additional charge would be included; (2) cross-examined the Commonwealth's witness on information relevant to a defense on this charge; (3) did not assert any specific prejudice suffered as a result of the amendment; and (4) did not request a postponement to retain an expert witness); ***Page***, 965 A.2d at 1224 (the defendant was not prejudiced by the Commonwealth's amendment to the information for an aggravated indecent assault charge, from a child under 18 to a child under 13, because the amendment did not require a change in defense strategy; child victim was known to the defendant before trial and he was aware age was an element of the offense); ***Sinclair***, 897 A.2d at 1223-24 (the defendant did not suffer prejudice when the Commonwealth amended the information to include an additional charge of DUI — high rate of alcohol, because the underlying facts supporting this charge were known to the defendant from the time he was charged and no substantive changes were made to the elements of the crime). The above cases determined whether a defendant experienced prejudice based on whether they had notice the amended charges could be brought against them. The cases did not address whether, as Appellant argues, amendment was proper due to a "defect in form."

Next, we address Appellant's argument that he was not on notice to defend against unlawful contact as amended. *See* Appellant's Brief at 13. We disagree. Appellant correctly recounts that the criminal information specified he was charged at Section 6318(a)(5). *See* Criminal Information at 2. However, both the criminal complaint and affidavit of probable cause alleged the specific conduct underlying the charges — that Appellant made "inappropriate comments" and "inappropriately touched" Victim. *See* Affidavit of Probable Cause at 1 (stating Appellant "inappropriately touched" Victim); Police Criminal Complaint at 2 (alleging Appellant "corrupt[ed] the morals of [V]ictim by touching her vagina with his finger, making inappropriate comments about [V]ictim's body[,] and inappropriately rubbing his body against [her]").

Additionally, the parties' opening and closing statements and presentation of evidence, which Appellant ignores on appeal, inform our analysis.[8] In its opening statement, the Commonwealth highlighted that Appellant "engage[d] in inappropriate conversations with" Victim, commented on her body, and gradually began touching her in a sexual manner. *See* N.T. Jury Trial at 44-45. The Commonwealth informed the jury that the "bulk of the evidence" it was presenting was Victim's testimony. *Id.* at 45. Then, in

_____

[8] The Commonwealth argues in its brief that on the first day of trial, Appellant agreed to jury instructions for unlawful contact under Subsection (a)(1). *See* Commonwealth Brief at 16. However, the Commonwealth does not provide a citation to the notes of testimony and upon our review, we could not locate this discussion.

its closing argument, the Commonwealth again focused on Appellant's comments and inappropriate touching, and told the jury it would need to "rely on [V]ictim's testimony primarily." *See id.* at 199-200, 202-03, 206. Further, regarding the elements of unlawful contact, the Commonwealth specified the charge required "just . . . having communication[.]" *Id.* at 205. It argued Appellant committed this offense by "having contact in person where [Appellant] had the purpose of perpetrating the crime of indecent assault." *Id.* The Commonwealth did not allude to any accusations supporting Subsection (a)(5), relating to child pornography, at any point during its case in chief, opening statement, or closing argument.

In Appellant's opening statement, he stated:

[The Commonwealth] alluded [that its] case . . . is going to hinge solely on [Victim's] testimony . . . and it is certainly true that [the jury] could find [Appellant] guilty beyond a reasonable doubt simply from [her] testimony . . . because that's all [the Commonwealth] ha[s]. . . .

[I]n this case, there is not going to be . . . any photographs, there is not going to be any fingerprints, or DNA, or anything like that, and those are all things that [the jury] should take into consideration.

N.T. Jury Trial at 49-50 (paragraph break added).

During closing argument, Appellant noted there was, in fact, physical evidence the Commonwealth failed to present, but only in the form of text messages between Victim and H.C. discussing the abuse. N.T. Jury Trial at 195-96. Appellant then acknowledged the elements of a charge under Subsection (a)(1):

[T]he unlawful contact with a minor charge requires that the contact be for the purpose of engaging in an indecent assault, which is a physical touching, a physical assault.

*Id.* at 197. Appellant presented no argument in either his opening or closing statements, nor evidence, related to unlawful contact under Subsection (a)(5).

In light of the foregoing, we conclude no relief is due. Appellant was on notice that he was defending against unlawful contact under Subsection (a)(1), and the amendment did not introduce new or unknown facts. The Police initially filed a criminal complaint and affidavit of probable cause informing him of the specific conduct leading to criminal charges. The surrounding circumstances and context at trial overwhelmingly demonstrate Appellant had adequate notice of this crime, as he presented a defense against conduct proscribed under Subsection (a)(1), not (a)(5). *See* N.T. Jury Trial at 49-50, 195-97. Specifically, Appellant argued during closing argument that his "unlawful contact with a minor charge requires that the contact be for the purpose of engaging in indecent assault, which is a physical touching[.]" *Id.* at 197. This comment was made before Appellant raised any Subsection (a)(5) issue with the court. As such, the trial court did not abuse its discretion in finding any insistence that he was not on notice, to defend against this charge, was disingenuous.

Further, amending the information did not introduce new charges or necessitate a material change in defense strategy. Subsections (a)(1) and (a)(5) require differing underlying offenses. Appellant was charged with two

- 16 -

counts of indecent assault, which also served as an underlying offense for unlawful contact under Subsection (a)(1). Appellant knew of the allegations against him and relied on a trial strategy that contemplated unlawful contact under Subsection (a)(1). Neither the Commonwealth nor Appellant offered any evidence or argument pertaining to any crimes relating to child pornography, and as such, this amendment to the information did not necessitate a change in trial strategy. Accordingly, Appellant was aware he was defending against this charge, and experienced no prejudice when the Commonwealth corrected its clerical error. **See Jackson**, 215 A.3d at 979-80.

Thus, the amendment to the information did not violate Rule 564, which seeks to ensure defendants are "fully apprised" of the allegations they are facing and prevent prejudice resulting from "last minute addition[s]" during trial. **See** Pa.R.Crim.P. 564; **Jackson**, 215 A.3d at 979. Under these particular circumstances, we determine the trial court did not abuse its discretion when it permitted an amendment to the information after closing arguments. **See Sandoval** 266 A.3d at 1101; **Jackson**, 215 A.3d at 979-80.

Lastly, we address Appellant's argument that the public records reflect he was erroneously convicted of 18 Pa.C.S. § 6318(a)(5). **See** Appellant's Brief at 11, 17-18. Appellant insists this error requires this Court to vacate his sentence and remand the matter for a new trial. **Id.** at 18. Instead, we conclude this is merely a clerical error and does not warrant a new trial. **See Commonwealth v. Young**, 695 A.2d 414, 419-20 (Pa. Super. 1997) (where

facts recited at the defendant's plea hearing supported one count of indecent assault under 18 Pa.C.S. 3126(a)(1) (without complainant's consent), and parties agreed to withdrawal of separate count of indecent assault under 3126(a)(4) (complainant is unconscious), mistaken recording of the plea as to 3126(a)(4) was a mere clerical error and did not amount to manifest injustice, the defendant may not withdraw his plea, and court should have corrected the clerical error to the proper subsection). Accordingly, we remand for the limited purpose of correcting the criminal docket to reflect the proper subsection of unlawful contact under which Appellant was convicted.

Judgment of sentence affirmed. Case remanded for limited purpose of correction of clerical error. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/7/2023